KEVIN ALAN HOLDEN

Plaintiff

Vs.

COBB COUNTY

and

TRAVIS WOOD

and

ERIC SHINHOLSTER

and

T.R. ALEXANDER, in their individual capacities.

Defendants

1:15-CV-1933

## COMPLAINT

### PRELIMINARY STATEMENT

1. This federal civil rights lawsuit arises from the unwarranted detention, humiliation, willful and malicious misconduct toward an unarmed Cobb County resident by two Officers of the Cobb County Police Department.

2. On June 1st, 2013 the Defendant Officers Wood and Shinholster responded to a "suspicious person' Police call, in the course of this investigation, the Defendants subjected Mr. Holden to unwarranted and unnecessary psychological duress causing Mr. Holden to seek help from an inpatient psychiatric hospital. Family counseling, and post traumatic stress disorder treatment.

3. Upon information and belief, Officer Wood did unconstitutionally detain and terrorize Mr. Holden in retaliation for Mr. Holden requesting an incident report be filed.

4. Upon information and belief, Officer Shinholster did subject Mr. Holden to assault, and then ejected Mr. Holden from the park grounds without cause.

5. Post incident, Officer Wood, Officer Shinholster, Capt. T. Alexander, Sgt. Kevin Gardener, Lt. James Vanness, Capt. Jerry Quan, Lt, Scherer, and Mrs. Sarah Maness did willfully engage in covering up the civil rights violations perpetrated upon Mr. Holden by Officer's Wood and Officer Shinholster of the Cobb County Police Department .

6. Upon information and belief, Capt Alexander did oversee the tampering and unlawful manipulation of the audio portion of the Police dash cam video, relating to the incident.

7. Mr. Holden now seeks redress for the Defendants violations of his constitutional rights, and for damages.

JURISDICTION

8. This action arises under the Constitution and laws of the United States including 42 U.S.C. 1983, 1985

and the laws of the state of Georgia.

This Court has jurisdiction pursuant to 28 U.S.C. 1331.1343 and 1367.

VENUE

9. Venue is proper pursuant to 28 U.S.C.  1391(b) as a substantial part of the events

Giving rise to the claims occurred in the Northern District of Georgia.

PARTIES

10. At all times relevant to this action, Plaintiff Kevin Alan Holden was a citizen of the United States

for the purposes of 42 U.S.C. 1983, 1985.

11. At all times relevant to this action, Mr. Holden was considered a "citizen" for the purposes of the

Fourth Amendment to the United States Constitution.

12. At all times relevant to this action, Mr. Holden was considered a "citizen"

For the purposes of the First Amendment to the United States Constitution.

13. At all times relevant to this action, Mr. Holden was considered a "citizen" for the purposes of the Eighth Amendment to the United States Constitution.

14. Defendant Travis Wood ("Defendant Wood") was, at all times relevant to this action, a law

Enforcement officer employed by the Cobb County Police department.

15. At all times relevant to this action, 'Defendant Wood was a person acting under

color of state and local law.

16. Defendant Wood is sued in his individual capacity.

17. Defendant Eric Shinholster ('Defendant Shinholster") was at all times relevant

to this action, a law enforcement officer employed by the Cobb County Police Department.

18. At all times relevant to this action, Defendant Shinholster was a person acting under color

of state or local law.

19. Defendant Shinholster is sued in his individual capacity.

20. At all times relevant to this action, Capt. T.R. Alexander was a person acting under color of state and local law.

21. Capt. T. R. Alexander is sued in his individual capacity.


FACTUAL ALLEGATIONS

22. On the afternoon of June 1st, 2013, Plaintiff Kevin Alan Holden was playing guitar and supervising his 6 year old child and a neighbor friend at 3322 Roswell Rd. (known as "East Cobb Park")

23. A young child approached Mr. Holden and asked if he was a "hobo?"

This child was unknown to Mr. Holden.

24. Mr. Holden inquired as to what a "hobo" might be.

25. The boy replied that his father had advised him that "hobo's" are smelly, play guitar, and they hate war.

26. Mr. Holden responded that he did not believe that he is a "hobo."

27. The boy ran off, returned a few moments later, and inquired of Mr. Holden if he might be a "hipster?'

28. Mr. Holden inquired as to what a "hipster" might be?

29. The boy responded that his father, once again, advised him that "hipster's" are smelly, play guitar, and have money.

30. Mr. Holden advised the boy that he is definitely not a "hipster."

31. A few minutes later, Mr. Holden notices a woman staring at him intensely, a few yards away.

32. Mr. Holden notices that the woman is clutching the same boy in a protective manner.

33. A call was then placed to 911 stating "White male, thin carrying a guitar olive tank top and shorts...he keeps calling kids over to where he is to hear him play guitar. He is on the other side of the fence4. He is still 10-7 staring at the playground on the other side of the fence4..He called some kids to jump over the fence and they did. They are back in the the playground now meet with Comp under the pavilion at the playground.

34. Plaintiff alleges that no child under his supervision did "jump over the fence."

35. Plaintiff alleges that the two male children were hot, thirsty, tired, and both generally physically lazy children who would not have exerted the energy to "jump the fence."

36. Plaintiff alleges that both children had been to East Cobb Park many times, while supervised by the Plaintiff, and it was a" known rule" that jumping over the playground fence was not acceptable behavior.

37. Plaintiff alleges that Mrs. Susan Pettix-Johnson did not, in fact, witness any such "fence jumping."

38. At 4:12 PM, Cobb County Police officer Travis Wood (Defendant Wood) arrived at location, double parked his patrol vehicle in the main roadway "entrance-exit" of the upper parking deck area at East Cobb Park, clearly impeding the "exit lane" flow of traffic out of the park.

39. Defendant Wood did then speak to a Mr. Robert Johnson, who pointed out the "suspicious" man to Officer Wood.

40. Plaintiff alleges that Defendant Wood could not have properly or reasonably interviewed Mr. Johnson to investigate the reason for the call.

41. Defendant Wood then advised Mr. Johnson to "wait here while he speaks to the white male who was standing beside the fence with a guitar."

42. Mr. Holden was not known to Defendant Wood.

43. Mr. Holden was not armed.

44. Upon information and belief. Mr. Holden may have still been wearing a very large, cumbersome acoustic guitar and posed no immediate threat to Defendant Wood, or to the children.

45. Upon information and belief. Mr. Holden stated that the officer approached in a very aggressive and public manner.

46. Upon information and belief. Mr. Holden stated that Defendant Wood approached him quickly, and directly.

47. Upon information and belief. Mr. Holden stated that the approaching Officer's left hand did clutch what appeared to be, a holstered weapon.

48. Defendant Wood then approached Mr. Holden and began his field investigation.

49. At no time during Defendant Wood's field investigation, did Mr. Holden fail to comply or cooperate fully with Defendant Wood's requests for information, or refuse to answer any inquiry truthfully.

50. Defendant Wood did ascertain through his field investigation that the two male children in question were, in fact, under the care and supervision of Mr. Holden.

51. Defendant Wood's field investigation did last approximately 30-40 seconds.

52. At no point after Defendant Woods discovery of Mr. Holden's presumed innocence , did Defendant Wood" radio in "or" call off" the backup officer to apprise that the situation had been a simple misunderstanding, and that" backup" was no longer required.

53. Mr. Holden did request Defendant Wood's badge number and supervisor contact information.

54. Defendant Wood did then provide Plaintiff this information, writing the information on a piece of paper and handing the paper to Mr. Holden.

55. Mr. Holden had this paper and information in his possession.

56. Defendant Wood then stated "we won't even write up an incident report."

57. Unaware of the existence of such a document, Mr. Holden verbally requests an incident report be filed.

58. Defendant Wood clearly upset by this request reaches his hand out, indicating that the Plaintiff is to hand Defendant Wood the slip of paper back. Plaintiff then handed Defendant Wood the piece of paper.

59. Defendant Wood states "follow me."

60. Defendant Wood did not give Plaintiff the opportunity to advise the children as to where and why Mr. Holden was suddenly and hastily removed from the scene.

61. Mr. Holden was himself unsure why he was being lead away from the children, the scene, and why it was necessary to travel to the officers patrol vehicle for an incident report number.

62. At 4:13 pm Defendant Shinholster arrives on scene.

63. Upon information and belief, Mr. Holden was escorted to Defendant Wood's patrol vehicle as a punishment for requesting that an incident report be filed, and for requesting defendant Wood's supervisor contact information.

64. While being escorted across the Park grounds to Defendant Wood's patrol car, Mr. Holden attempted to locate the party responsible for the call to Cobb County 911.

65. Terrified, and fearing for his physical safety, Mr. Holden calls out to a crowd, "so who pegged me as a child molester?"

66. Mr. Johnson stands up to identify himself to Mr. Holden and states' I didn't say you were a child molester."

67. Mr. Johnson was unknown to Plaintiff.

68. Mr. Holden states to Mr. Johnson "you watch too much T.V."

69. Defendant Wood then aggressively advised Mr. Holden that "if he says another word, he will be arrested for disturbing to peace."

70. Upon information and belief. Mr. Holden, did, at no time, indicate to Defendant Wood intent to verbally or physically harm any member of the Johnson family. (Complainants)

71. Mr. Holden was not, in fact, aware, or able to identify which party, at the park, had phoned the Police.

72. Mr. Holden had inquired earlier of Defendant Wood, to identify the party responsible for the call, to which Defendant Wood replied that he could not provide this information.

73. Defendant Shinholster claims in his incident report that he first witnessed Defendant Wood walking behind Mr. Holden , whom he described as "appearing quite agitated" and was "walking in an aggressive manner' toward Mr. Robert Johnson.

74. Plaintiff alleges that he could not have possibly "walked in an aggressive manner" toward Mr. Johnson, as Plaintiff was unaware who had phoned the Police.

75. Plaintiff alleges that any "aggressive" action by the Plaintiff would have resulted in Defendant Wood's immediate beating, tasing, or shooting of Plaintiff.

76. Mr. Holden begins to document the seizure of his person, and the unnecessary and intimidating behavior of the Officers, with his cellular phone's built in camera.

77. Defendant Shinholster rushed toward Defendant Wood and Mr. Holden en route to Defendant Wood's patrol vehicle.

78. Upon information and belief. Defendant Wood advises Defendant Shinholster that Mr. Holden is "upset with the police for coming out and asking him questions."

79. Upon information and belief, Defendant Woods' statement was a willful fabrication.

80. Mr. Holden experienced extreme levels of terror, and begins to physically shake with fear at hearing Defendant Wood's willful verbal manipulation of the truth.

81. Plaintiff alleges that neither officer discussed the suspicious person charge, the results of Defendant Wood's field investigation, Plaintiffs verbal claim that he, was indeed the "victim", the children's' well being or supervision, or "any subject" relevant to the situation.

82. Defendant Wood then handed Defendant Shinholster two slips of paper. 1.) Mr. Holden's Georgia State drivers license information   2.) Defendant Woods name, badge number, and supervisor contact information.

83. Defendant Shinholster then advised Mr. Holden that now he was" going to be videotaped."

84. Upon information and belief. Mr. Holden viewed this statement as a terroristic threat, experiencing extreme levels of terror.

85. Plaintiff could not understand why Defendant Shinholster would videotape a citizen receiving an incident report number.

86. Officer Shinholster did then travel to his patrol vehicle.

87. Upon information and belief, Officer Shinholster did subject Mr. Holden to an unnecessary and unwarranted NCIC check, hoping to find any pretext to arrest the Plaintiff on the spot.

88. Officer Wood did then subject Mr. Holden to unnecessary physical intimidation, verbal harassment, humiliation, and willful psychological abuse.

89. Plaintiff alleges that officer Wood did willfully and maliciously attempt to rile him to anger, hoping to selectively capture the response on his vehicles dash cam video.

90. Plaintiff alleges Defendant Wood did selectively attempt to capture on video, the emotional reaction to Defendant Wood's premeditated, malicious, and evil attempt to manipulate the Plaintiff to anger.

91. Plaintiff alleges that this "tactic" is most probably commonly used by the Cobb County Police Department.

92. Plaintiff alleges that Defendant Wood's dash cam media was purposefully deleted to protect Defendant Wood's constitutional violations.

93. Unable to find a pretense to arrest Mr. Holden, Defendant Shinholster did then assault Mr. Holden, subject Mr. Holden to humiliation, violate Mr. Holden's constitutional right to free speech, unlawful detainment, and  willful and maliciously eject Mr. Holden from the park premises without cause.

94. Plaintiff alleges that Defendant Shinholster's demand that he immediately leave the Park premises with the children, subjected Mr. Holden to unwarranted public humiliation, threat of arrest, physical, and psychological intimidation.

95. Plaintiff alleges that he was "in shock" at both officer's blatant, public, and apparently videotaped violations of his 1st and 4th Amendment rights, and did not feel it was safe to drive the children into traffic.

96. Plaintiff alleges that Defendant Shinholster did eject him without just cause, only manufacturing an excuse, corroborated by Defendant Wood, post incident.

97. Post incident, the Plaintiff did request and receive a copy of the Police dash camera video.

98. Post incident, the Plaintiff did request and receive a copy of both officers' incident reports.

99. Plaintiff did find" integral" moments of audio missing from the video.

100. Plaintiff alleges that the officers' incident reports were both rife with misquotes and mistruths.

101. Plaintiff was then unable to sleep, eat, or bath, fearing reprisals from the Cobb County Police.

102. Plaintiff alleges that the "audio feeds" were manipulated by whoever transferred the data to D.V.D.

103. Plaintiff alleges that through his investigation, it became known that Captain T. Alexander does command the civilian administrators, whom are responsible for the transfer of the audio feeds.

104. Plaintiff did re- request a copy of the Police dash camera video, this time requesting a better quality, an original, uncompressed and unaltered video file.

105. Plaintiff did re-request the two separate audio tracks (left and right channels) uncompressed, unedited, and unaltered.

106. Plaintiff has a long history and background in audio recording.

107. Plaintiff did request both officers' disciplinary files.

108. Plaintiff did find that Defendant Shinholster has a history of violence, and complaints about his hostile behavior toward citizens.

109. Plaintiff did find out that Defendant Wood was a new recruit, having no previous complaints.

CAUSES OF ACTION

COUNT 1

4th Amendment; 42 U.S.C. 1983/1985

110. Plaintiff re –alleges and incorporates by reference the allegations stated in 1-(??) above.

111. Defendant Wood escorted Mr. Holden to his patrol vehicle without justification.

112. Defendant Wood fabricated the excuse that Mr. Holden made the verbal request to travel to Defendant Woods' patrol vehicle in his incident report. This is not true.

113. Defendant Wood did remove Plaintiff from the scene without giving Mr. Holden an opportunity to advise the children as to where and why Mr. Holden was being lead away from scene.

114. This instantaneous, unwarranted, and malicious removal caused the Plaintiff and his six year old child much emotional duress.

115. Defendant Wood had, in his possession, Mr. Holden's driver's license information; hence had no reason to remove Mr. Holden from the children Plaintiff was supervising the playground area.

116. Plaintiff has the right under the Fourth Amendment to the United States Constitution, as applied to States through the Fourteenth Amendment, to be free from unreasonable seizures.

117. Defendants' actions constituted a seizure of Plaintiff's person.

118. Defendants' seizure of Plaintiff's person was unreasonable.

119. Defendants' actions subjected Mr. Holden to a deprivation of his rights as secured by the Fourth Amendment.

120. Defendants' acted under color of the statutes, ordinances, regulations and customs of the State of Georgia.

121. The law was clearly established prior to June 1st, 2013, that the Fourth Amendment's prohibition against unreasonable seizure is violated by Defendant Wood's removal of Plaintiff from the playground area.

122. Plaintiff was injured by Defendants' unconstitutional seizure, which deprived Plaintiff of his rights secured by the Fourth Amendment.

123. Defendants' conduct of subjecting Plaintiff to an unconstitutional seizure without reasonable suspicion was motivated by evil motive and intent, and was recklessly and callously indifferent to the Plaintiff's Fourth Amendment rights.

124. Plaintiff suffered mental and emotional distress as a result of Defendants' unconstitutional seizure.

COUNT II

1st Amendment; U.S.C. 42  1983

125. Plaintiff re alleges and incorporates by reference the allegations stated in (?-? above.

126. Plaintiff had the right under the First Amendment to the United States Constitution to free speech.

127. Defendant Wood's actions deprived Plaintiff of his right to free speech.

128. Defendant Wood did deny Mr. Holden his 1st. Amendment rights in a reckless and callous way.

129. It was not necessary to deprive Plaintiff of his First Amendment rights.

130. Defendant Shinholster did deny Mr. Holden his 1st Amendment rights as secured by the 1st Amendment of the United States in a reckless and callous way, the motive being evil intent.

131. Plaintiff alleges that the missing audio from Defendant Shinholsters Police vehicle dash camera violated Plaintiff's First Amendment rights.

132. Plaintiff alleges that Defendant Alexander is ultimately responsible for the missing audio portions of Defendant Shinholster's dash camera video, thus depriving Plaintiff of his rights under the First Amendment to the United States Constitution.

133. Plaintiff alleges that the wholly and unexplainably missing audio and video from Defendant Wood's patrol dash camera does violate Mr. Holden's First Amendment rights as secured by the United States Constitution.

COUNT III

Excessive Force- 4th Amendment; 42 U.S.C. 1983

134. Plaintiff re-alleges and incorporates by reference the allegations stated in (? - )

135. At no time relevant to this action did Mr. Holden pose an objective, immediate threat to the Defendants' or any other person.

136. At no time relevant to this action was Mr. Holden armed with a weapon.

137. At no time relevant to this claim did Mr. Holden assault, batter, threaten or resist any officer of the law or any other person.

138. It was not necessary for Defendants' to use the show of force against Plaintiff.

139. Plaintiff had the right under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures in the form of excessive force.

140. Defendants' actions constituted a seizure of Plaintiff's person.

141. Defendants 'actions subjected Mr. Holden to a deprivation of his rights as secured by the Fourth Amendment.

142. Defendants' acted under color of statutes, ordinances, regulations and customs of the State of Georgia.

143. Plaintiff was injured by Defendants' unconstitutional seizure in application of excessive force, which deprived Plaintiff of his rights secured by the Fourth Amendment.

144. Defendant Shinholster did corroborate with Defendant Wood in depriving the Plaintiff of his right to unreasonable seizure as secured by the Fourth Amendment to the United States Constitution.

145. The law was clearly established before June 1st; 2013.that the Fourth Amendment's prohibition of excessive force was violated by both officer's Wood and Shinholster.

COUNT IV

146. Cruel and Unusual Punishment-8th Amendment 42 U.S.C. 1983/1985

147. Plaintiff re- alleges and incorporates by reference the allegations stated in above.

148. At no time relevant to this action did Mr. Holden pose an objective, immediate threat to the Defendants or any other person.

149. It was not necessary for Defendant Wood to remove Mr. Holden from the scene to provide an incident report number.

150. The show and threat of force shown to Mr. Holden by both officers was not necessary.

151. Plaintiff had the right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

152. Defendant's conduct of excessive force, assault, humiliation, mental abuse, and threat of force, was not justified.

153. At no time did Mr. Holden commit an offense within the immediate knowledge of Defendants.

154. It has been established that Mr. Holden was supervising the children, and that the situation was a simple misunderstanding within forty seconds of Defendant Wood's field investigation.

155. At no time did Mr. Holden pose a physical threat or attempt to escape from Defendants.

156. At no time did the officers advise the Plaintiff that he was free to leave.

157. Defendants did willfully and maliciously fabricate mistruths and misquotes in their incident reports.

158. Defendants did with evil motive and intent conspire together to cover up their violations as written in their incident reports.

159. All actions by Defendants after this point in time were motivated by evil motive and intent or were recklessly or callously indifferent to the Plaintiff's Eighth Amendment rights.

160. Plaintiff suffered mental and emotional distress as a result of Defendants unconstitutional infliction of mental anguish, threat of physical harm, humiliation, and ejection from the Park property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this court award the following relief:

a. Compensatory damages ;

b. Punitive damages against Defendants individually ;

c. Attorney's fees and costs of litigation pursuant to the provisions of Title 28 of the United States Code and 42 U.S.C. 1988;

d. Pre-judgment and post-judgment interest on any award of damages;

e. Costs of litigation pursuant to O.C.G.A.  13-6-11; and

f. Such other and further relief as this court deems just and appropriate.


Respectfully submitted this 28th day of May, 2015.

Kevin Holden

kevinaholden@yahoo.com

1098 Azalea cir.

Marietta, Ga. 30062

Tel: 770-757-7390